David Present Co., Inc., Respondent, v. Joseph Tamasauskas and Another, Copartners Trading as Tamasauskas & Butenas, Appellants.

First Department, November 28, 1924.

Landlord and tenant — action to recover rent — plaintiff sublet loft to defendants — lease did not contain provision that in case of default plaintiff might relet for benefit of defendants — after defendants vacated, plaintiff either itself or through tenant occupied premises — plaintiff accepted surrender and cannot recover rent.

The plaintiff is not entitled to recover rent from the defendants under a written lease of a loft for the period remaining after the defendants vacated the premises, since it appears that the lease did not contain any provision allowing the plaintiff, in case of default on the part of the defendants, to relet the premises for the benefit of the defendants and that after the defendants vacated the premises, which they claimed was done by mutual consent, the plaintiff either on its own behalf or through another tenant occupied the premises. The act of the plaintiff in occupying the premises after they were vacated by the defendants, amounted to an acceptance of defendants' surrender thereof, and released them from the payment of any further rent.

Appeal by the defendants, Joseph Tamasauskas and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of October, 1923, upon the verdict of a jury rendered by direction of the court.

*Fasullo & Caruso* [*Charles L. Fasullo* of counsel], for the appellants.

*Leo Levy* [*Henry H. Haire* with him on the brief], for the respondent.

Merrell, J.:

The action was to recover rental for a loft sublet by the plaintiff to the defendants for a term from April 21, 1921, to April 30, 1923, at a yearly rental of $1,500, $125 being payable in advance in each month of said term. The plaintiff is a domestic corporation and the defendants are copartners. The lease in question was executed April 20, 1921, and thereby the plaintiff leased to the defendants the second floor of premises at 319 Grand street in the borough of Brooklyn, New York city. The testimony in behalf of the plaintiff was that the defendants entered into possession of the leased premises on April 21, 1921, and continued in such possession until December 2, 1921, when defendants vacated said premises and thereafter refused to pay the monthly rental for the remaining fifteen months of the term of the lease.

The answer of the defendants admitted the execution of the

lease in suit, but denied liability for the unpaid rentals claimed by the plaintiff. As a separate and distinct defense the defendants allege in their answer that on or about November 30, 1921, the defendants vacated and surrendered the leased premises with the consent and knowledge of the plaintiff, and that the plaintiff accepted such surrender and re-entered and took possession of the leased premises and thereafter occupied the same.

Upon the trial the court directed the defendants to take the affirmative of the issue. Joseph Tamasauskas, one of the defendants, testified that he had formerly been employed by the plaintiff in the manufacture of clothing, whole suits and overcoats, and that in April, 1921, the defendants took a lease of the premises in question. Said defendant testified that the general manager of the company was a Mr. Needle and that the lease was negotiated by the defendant with Needle representing the plaintiff. The defendant Joseph Tamasauskas further testified that he had a conversation with Needle about the 18th of November, 1921, when Mr. Needle came into the shop and said defendant told him that he wanted to sell the shop; that he could no longer exist in the business, and that he had a party who wanted to buy the business and who would take over the lease, and that Needle told him in effect that the plaintiff had " got to keep " the premises itself and agreed to let the defendants know a couple of days later; that Needle came back to him on November 25, 1921, and told him that the plaintiff would give the lease to nobody, and wanted to keep the floor itself for the business. Tamasauskas testified that the defendants moved out the 29th of November, 1921, and that at that time Needle came to the place and the defendant asked him what they had to do with the keys when they moved out and that Needle replied for them to deliver the keys to the janitor, and stated that the plaintiff was glad they were moving out because it needed the floor " pretty quick." The defendant Joseph Tamasauskas further testified that he passed the place two weeks latter and found a stock of overcoats there on sale; that he asked Needle what they were doing, and that Needle replied " We got a lot of overcoats; a big sale;" that the witness then asked him who kept the business up there and Needle replied: " The David Present Company," and asked defendant if he wanted to see the overcoats and to come upstairs and that he went upstairs and found a couple of people there and David Present, the president of the plaintiff, and Mr. Needle doing business there, and that he asked Present who was the owner of the business and he replied that it was the David Present Company and told the defendant that if he knew of some customers to bring them down and he

First Department, November, 1924.                    [Vol. 210

would give him a commission and that at the time 'the David Present Company was using the place and had a large quantity of goods there for sale. Defendant Tamasauskas further testified that in January, 1922, he was at the place of business which he had formerly occupied under said lease and had a talk with Mr. David Present, and that he asked Present who the owner of the business was and that he replied " the David Present Company " and said to the defendant: " We have to keep that floor for David Present Company. We have to do the business up here. He told the defendant if he had any customers who wanted to buy overcoats to bring them down and he would give him a good commission, and that Present said nothing to him about the lease, but that they would keep the place for themselves. Tamasauskas further testified that he told Present that Needle came to his place of business on November twenty-fifth and told him that the lease would not be given anybody else because the David Present Company would keep the place to do business itself, and to this David Present stated to the defendant: " I am satisfied. I am glad you moved, because we needed that floor for ourselves, the David Present Company," and that he was satisfied and glad defendants had moved because they wanted to use it for themselves.

While this testimony was denied by David Present, president of the plaintiff, who also denied that Needle was either an officer, a director, or an executive of the plaintiff, but merely an employee, on cross-examination, the president of the plaintiff admitted that Needle had been continually in their employ and that he had while in their employ, with the consent of the plaintiff, occupied the premises in December, 1921, and January, 1922, where he had conducted a sale of overcoats consigned to him by the plaintiff. Plaintiff's president admitted that at this time Needle was under employment and paid a salary by the plaintiff. Plaintiff's president also admitted being in the premises himself a short time in January, 1922.

Needle was sworn as a witness for the plaintiff and in a measure corroborated plaintiff's president with reference to the arrangement under which he occupied the leased premises after defendants had vacated the same.

At the close of the testimony, on motion of counsel for the plaintiff, the court directed the jury to return a verdict in plaintiff's favor for the amount claimed, being the rental at $125 a month for the remaining fifteen months of the term. To such direction the defendants duly excepted.

I think the court improperly granted plaintiff's motion for the direction of a verdict. The evidence clearly shows that the

defendants surrendered possession of the leased premises on or about November 29, 1921, and that plaintiff acquiesced in such surrender and resumed possession of the leased premises and thereafter occupied the same for business purposes. (*Gray* v. *Kaufman Dairy & Ice Cream Co.*, 162 N. Y. 388.)

If the occupation after defendants' surrender was by plaintiff, either in its own name or through Needle, its employee, then there can be no question of acquiescence by plaintiff in defendants' surrender of the premises. If the premises were relet to Needle, as plaintiff's president and Needle claimed, plaintiff would be in no better position. The lease under which defendants held the premises contained no clause authorizing a reletting of the premises by the landlord as agent of the defendants. Therefore, the plaintiff, in reletting the premises to Needle, was not acting as defendants' agent, but for itself as landlord. (*Gray* v. *Kaufman Dairy & Ice Cream Co., supra.*) The evidence clearly shows that after the surrender of the leased premises, the plaintiff resumed possession thereof and exercised such dominion over the premises as constituted an acceptance of defendants' surrender thereof, and thereby defendants were released from the payment of any further rent.

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs to the defendants, appellants.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.